**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric L. Gilbert, *et al.*, | No. CV-17-03762-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, *et al.*, | |
| Defendants. | |

At issue is the Motion to Dismiss and/or, Alternatively, Motion for Summary Judgment (Doc. 27, MTD) and Separate Statement of Facts (Doc. 28, DSOF) filed by Defendant Philip K. Leopard, as Trustee of Namaca Management, Ltd. Plaintiffs Eric L. and Audra Gilbert filed a Response (Doc. 39, Resp. to MTD) with a Separate Statement of Facts (Doc. 40, PSOF), and Leopard filed a Reply (Doc. 48, Reply to MTD). Leopard also filed a Reply Statement of Facts (Doc. 49), but because this filing is prohibited by Local Rule 56.1(b), the Court will strike it from the docket.

Also at issue is Leopard's Motion for Leave to File First Amended Verified Answer and Counterclaim (Doc. 57, MTA), to which Plaintiffs filed a Response (Doc. 60, Resp. to MTA), and Leopard filed a Reply (Doc. 61, Reply to MTA).

Defendant the United States did not file briefs in response to Leopard's Motions. The Court resolves these Motions without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

In the First Amended Complaint (FAC)—the operative pleading—Plaintiffs allege the following. (Doc. 18, FAC.) On July 2, 2014, Plaintiffs entered into a Contract for

Deed ("Contract") with Namaca Management, Ltd., a foreign "Unincorporated Business Trust Organization."[1] (FAC Ex. A, Contract.) Defendant Leopard is Namaca's Trustee. The Contract provides the terms for a sale by Namaca (Seller) to Plaintiffs (Buyer) of a residential property ("Property") in Peoria, Arizona, for $1.2 million, with a $60,000 down payment payable upon execution of the Contract. The Contract provides, "The Seller guarantees the Property is not currently encumbered and further agrees to take no action causing the Property to become encumbered so long as this Contract is in effect." (Contract at 1.) It also states:

> Seller affirms they have not allowed any interests (legal rights) to be created who [sic] affect the ownership or use of this property. No other persons have legal rights in this property, except the rights of utility companies to use this property along the road or for the purpose of serving this property. There are no pending lawsuits or judgments against Seller or other legal obligations, which may be enforced against the Property.

(Contract at 2.)

On July 3, 2014—the day after the parties entered into the Contract—First American Title Agency issued a Condition of Title report that reflected the existence of a tax lien on the Property in favor of the United States, recorded on March 5, 2014, in the amount of $416,372.05. In response, Leopard represented to Plaintiffs that the tax lien was an invalid lien.

---

[1] The parties do not appear to dispute the authenticity or enforceability of the Contract, but the Court notes the Contract does not identify who executed it on behalf of Namaca, instead showing Namaca, the trust, as signatory. (Contract at 3.) A trust does not have its own signature.

> A trust is not a legal entity. A trust is not an entity distinct from its trustees and capable of legal action on its own behalf, but merely a fiduciary relationship with respect to property. A trust is not a legal 'person' which can own property or enter into contracts, rather, a trust is a relationship having certain characteristics.

76 Am. Jur. 2d *Trusts* § 3 (2005) (citing state court decisions). Thus, "[a] typical trust can only act through its trustee(s) or agents thereof." *Lane v. Wells Fargo Bank, N.A.*, 2012 WL 4792914, at *6-7 (D. Nev. Oct. 8, 2012).

On July 19, 2014, Plaintiffs and Namaca entered into an Amendment to Contract for Deed ("Amendment"). (FAC Ex. B, Amendment.) Among other things, it provided:

> Title search has discovered an invalid lien and other issues with title to the Property. These title issues shall be resolved prior to or at the time of final conveyance of the Property deed to Purchaser. See Attachment B "ALTA Commitment (6-17-06)-N", and Seller is taking immediate and appropriate steps to have the title issues resolved as quickly as possible.[2]

Plaintiffs signed the Amendment, and, although a signature is present as Authorized Signatory on behalf of Namaca, it is unclear whose signature it is.[3]

The Contract provided that Plaintiffs pay $4,750 per month for the first 24 months and make an additional lump sum payment of $90,000 by March 1, 2015, which Plaintiffs did. Under the Contract, after 24 months, the monthly payments are to be calculated by way of an attached Adjustable Rate Rider, and the final balloon payment on the Property is due on August 1, 2019.

On November 4, 2015, the United States recorded a second tax lien on the property, in the amount of $283,007.48. In response, Plaintiffs allege that Leopard represented "on several occasions" that the tax liens would be removed from the Property. (FAC ¶ 23.)

On August 31, 2017, Plaintiffs notified Leopard's attorney that, because Namaca is a foreign trust, the Foreign Investment in Real Property Tax Act (FIRPTA) requires them to withhold a portion of the purchase price due. Furthermore, Plaintiffs contended that the rules governing Fixed or Determinable Annual or Periodic (FDAP) income of nonresident aliens or foreign partnerships require them to withhold a portion of their

---

[2] Neither party has provided to the Court Attachment B to the Amendment, "ALTA Commitment (6-17-06)-N."

[3] In their Response brief, Plaintiffs point out that, on December 8, 2014, Leopard on behalf of Namaca filed suit in Arizona state court against I.R.S. officials to challenge the tax liens on the Property, and the I.R.S. officials removed the case to the District of Arizona on February 11, 2015. (Case No. 2:15-cv-00257-SRB, Doc. 1.) District Judge Bolton dismissed the case on April 8, 2015, on account of Namaca's failure to comply with a Court Order. (Case No. 2:15-cv-00257-SRB, Doc. 11.)

interest payments. Accordingly, Plaintiffs requested Namaca's Taxpayer Identification Number.

On September 6, 2017, Leopard responded by sending extensive documentation, and it did not include an Internal Revenue Service (I.R.S.) Form W-8—a foreign entity's claim that it is exempt from certain tax withholdings—but did include materials purporting to be withholding and reporting certificates apparently downloaded from a "Sovereignty Education and Defense Ministry" (SEDM) website. These materials represented that Leopard and Namaca are "non-resident non-persons" exempt from U.S. tax withholding.

On September 22, 2017, Plaintiffs' counsel responded that the I.R.S. has discredited Leopard's representations and that Plaintiffs must withhold all additional sums payable under the Contract until their FDAP withholding obligations have been satisfied. On September 29, 2017, Leopard responded by sending a 174-page publication that attempts to refute the I.R.S.'s publication titled "The Truth About Frivolous Tax Arguments." Leopard stated that the Property is not a "U.S. real property interest" subject to statutory withholding and that Plaintiffs' compliance with I.R.S. withholding requirements would be a breach of the Contract. Leopard repeated his position in letters dated October 4 and 6, 2017, that Plaintiffs' failure to make full payments to Namaca under the Contract is a breach.

On October 13, 2017, Plaintiffs filed this action against Leopard, as Trustee for Namaca, and against the United States. (Doc. 1.) On December 7, 2017, Leopard recorded a Notice of Election to Forfeit (DSOF Ex. B, Notice) in Arizona, which purports to forfeit Plaintiffs' interests under the Contract if they fail to pay the balance due on the Contract—over $1 million—by December 27, 2017. Then, on December 28, 2017, Leopard recorded an Affidavit of Completion of Forfeiture (DSOF Ex. D, Affidavit) in Arizona, purporting to forfeit Plaintiffs' interests under the Contract for failure to pay monies due.

In the FAC, Plaintiffs raise five claims against Defendants: (1) quiet title, against both Defendants; (2) interpleader, against both Defendants; (3) breach of contract and specific performance, against Namaca; (4) declaratory judgment, against Namaca; and (5) wrongful recording under A.R.S. § 33-420, against Namaca. Two theories underlie Plaintiffs' claims. First, Plaintiffs contend the Contract allows them to make a payment in full for the Property at any time, and they are prepared to do so now, but Namaca is not able to convey the Property to them with clear title as it is obligated to do under the Contract. Second, Plaintiffs are caught between the United States and Leopard in terms of Leopard's satisfaction of his tax and other obligations to the United States. Namaca, through Leopard, now moves to dismiss the claims against it.

Leopard filed an Answer to the FAC (Doc. 32, Answer) and now moves to file a First Amended Verified Answer and Counterclaim (FAVAC) to add three counterclaims against Plaintiffs, namely: (1) breach of contract; (2) unjust enrichment; and (3) quiet title. (MTA Ex. A, Proposed FAVAC.) The theory underlying Leopard's claims is that Plaintiffs improperly stopped making payments to Namaca and have now forfeited their interests in the Property under the Contract. The Court now resolves Leopard's Motion to Dismiss and Motion to Amend.

## II. LEGAL STANDARDS

### A. Motion to Dismiss FAC

In his Motion to Dismiss, Leopard requests that the Court take judicial notice of several documents he states are essential to the FAC that Plaintiffs failed to attach to the FAC, without converting his Motion to one for summary judgment under Federal Rule of Civil Procedure 12(d). (MTD at 5.) Generally, when deciding a Federal Rule of Civil Procedure 12(b)(6) motion, a district court may not consider material outside the pleadings. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). To do otherwise would convert a motion to dismiss into a motion for summary judgment. *Id.*; Fed R. Civ. P. 12(d). But there are two exceptions to this general rule: (1) a court may consider

material properly submitted as part of the complaint, and (2) a court may take judicial notice of, and properly consider, matters of public record. *Lee*, 250 F.3d at 688-89.

To begin with, Leopard falsely represents to the Court that Plaintiffs failed to attach the Amendment to their FAC. (MTD at 5, 6 & n.1.) Plaintiffs attached it as Exhibit B to the FAC. (Doc. 18-1 at 8-9, Amendment.) With regard to the other documents, the Court agrees that it can take judicial notice of the recorded Notice of Election to Forfeit (DSOF Ex. B, Notice) both because it is the basis of Plaintiffs' Count 5 and is a matter of public record. *See Lee*, 250 F.3d at 688-89. Likewise, the Court will take judicial notice of the recorded Affidavit of Completion of Forfeiture (DSOF Ex. D, Affidavit) because it is a matter of public record. *See id.* The Court need not, and declines to, consider Leopard's affidavit or the other extrinsic materials presented by the parties at this stage of the litigation, and the Court treats Leopard's Motion to Dismiss and/or for Summary Judgment as strictly one to dismiss under Rule 12(b)(6).

Pursuant to Federal Rule of Civil Procedure 8, a complaint must include "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that

'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B. Motion to Amend Answer to Add Counterclaims

A party may amend a pleading once as a matter of course within 21 days after serving it, or within 21 days of service of, among others, a Rule 12(b)(6) motion. Fed. R. Civ. P. 15(a). In all other circumstances, absent the opposing party's written consent, a party must seek leave to amend from the court. Fed. R. Civ. P. 15(a)(2). Although the decision whether to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend shall be freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15–to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted).

However, the policy in favor of allowing amendments is subject to limitations. Leave to amend is not appropriate if the "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers,* 310 F.3d 628, 636 (9th Cir. 2002) (citation and internal quotation marks omitted). "A district court does not err in denying leave to amend . . . where the amended complaint would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). Such futility can, by itself, justify denial of a motion for leave to amend. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003).

## III. ANALYSIS

### A. Motion to Dismiss FAC

#### 1. Count 1 – Quiet Title

In Count 1, Plaintiffs seek to quiet title in the Property against the claims of the I.R.S. and Leopard. (FAC ¶¶ 36-41.) A.R.S. § 12-1101(A) provides, "An action to determine and quiet title to real property may be brought by any one [sic] having or

claiming an interest therein, whether in or out of possession, against any person or the state when such person or the state claims an estate or interest in the real property which is adverse to the party bringing the action." A quiet title action is appropriate in instances in which the plaintiff requests an Order that the "defendant be barred and forever estopped from having or claiming any right or title to the premises adverse to plaintiff." A.R.S. § 12-1102(5).

To make out a *prima facie* claim to quiet title, the plaintiff must first allege that it has a title right to the property as against the defendant. In other words, the "plaintiff must succeed only on the strength of its own title, and not on the weakness of the title of his adversary." *Hardinge v. Empire Zinc Co.*, 148 P. 306 (Ariz. 1915). Here, Plaintiffs do not allege they have title to the Property, nor do the allegations in the FAC make such a proposition plausible. At best, Plaintiffs claim a hypothetical or future title in the Property. But the factual allegations show that, at present, Plaintiffs only have rights to the Property as provided under the Contract and Amendment, including possession and use (Contract at 1) and, upon making all payments under the Contract, the right to a warranty deed from Leopard and title to the Property (Contract at 2). Plaintiffs' allegations acknowledge that they have not made all payments under the Contract. Because Plaintiffs cannot allege they have the requisite title to the Property, their quiet title claim must fail. *See id.* (concluding plaintiff's claim failed because "[h]e offered no evidence of paramount title in himself"). Because it does not appear Plaintiffs can cure this defect by amendment, the Court will dismiss Count 1 with prejudice. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

### 2. Count 2 – Interpleader

In Count 2, for interpleader, Plaintiffs allege that the I.R.S. is an adverse claimant to Leopard with respect to Plaintiffs' monthly interest payments and outstanding balance under the Contract, and Plaintiffs request leave to deposit these monies with the Court pending resolution of the adverse claims and for a release of all liability under the Contract, the FDAP rules, their FIRPTA withholding obligations, and the I.R.S. liens on

the Property. (FAC ¶¶ 42-49.) Leopard generally interprets Plaintiffs' claim as one to resolve the satisfaction of the I.R.S. tax liens on the Property, on the one hand, as against Plaintiffs' obligations to make payments in full to Leopard under the Contract, on the other; Plaintiffs describe their claim as one to resolve satisfaction of Plaintiffs' obligations to withhold from their payments under the Contract certain taxes for payment to the I.R.S. under FDAP rules and FIRPTA, on the one hand, as against Plaintiffs' obligations to make payments in full to Leopard under the Contract, on the other. Under either construction, the claim fails.

The interpleader statute, 28 U.S.C. § 1335, states that district courts have original jurisdiction over actions filed by a plaintiff that possesses money or property worth $500 or more to which two or more adverse claimants of diverse citizenship contend they are entitled, if the plaintiff has provided the money or property, or given an equivalent bond, to the court. Federal Rule of Civil Procedure 22 provides, "Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead."

To begin with, "[t]he United States, for the purposes of interpleader statute, is not a citizen of any state." *Kent v. Northern Cal. Regional Office of Am. Friends Serv. Comm.*, 497 F.2d 1325, 1327 (9th Cir. 1974). Because one of the alleged adverse claimants is the United States, the requisite diversity is lacking, thus depriving this Court of jurisdiction over the claim under 28 U.S.C. § 1335. *Id.* As the *Kent* court stated, even though 28 U.S.C. § 2410—the statute governing actions affecting property on which the United States has a lien—states that the United States can be made a party to an interpleader action, the statute does not confer jurisdiction on federal courts. 497 F.2d at 1327-28.

The *Kent* court points out another reason the Court must dismiss the instant interpleader claim. If the interpleader claim is as Plaintiffs frame it—a decision whether to pay taxes under FDAP and FIRPTA or make payments to Leopard under the Contract—this Court cannot resolve the former question because it does not have

1  jurisdiction to resolve claims for injunctive relief with regard to federal tax liabilities. *Id.*
2  at 1328; *see also Huff v. United States*, 10 F.3d 1440, 1444-45 (9th Cir. 1993); *Hughes v.*
3  *United States*, 953 F.2d 531, 536-37 (9th Cir. 1992).

As a result, the Court will dismiss Plaintiffs' interpleader claim for lack of jurisdiction.

### 3. Count 3 – Breach of Contract and Specific Performance

In Count 3, Plaintiffs claim that Leopard breached the Contract and Amendment by failing to act to have the I.R.S. tax liens on the Property removed. (FAC ¶¶ 50-59.) Under Arizona law, the interpretation of a contract is a question of law for the court to decide, and the court must give effect to a contract provision as written if it is clear and unambiguous. *Hadley v. Sw. Props., Inc.*, 570 P.2d 190, 193 (Ariz. 1977).

In relevant part, the Amendment provides, "Title search has discovered an invalid lien and other issues with title to the Property. These title issues shall be resolved prior to or at the time of final conveyance of the Property deed to Purchaser." The Amendment also states, "Seller is taking immediate and appropriate steps to have the title issues resolved as quickly as possible." The Court disagrees with Plaintiffs' contention that, under these provisions, the deadline to have the I.R.S. tax liens on the Property removed has passed. As Leopard points out, the Amendment only states that Leopard will have the tax liens removed by "the time of final conveyance of the Property deed" to Plaintiffs. While some contracts have an implied term of a reasonable time in which to perform obligations when the contract does not specify a deadline, the Amendment does specify an end-date here: final conveyance of the deed.

The next sentence of the Amendment—that Leopard "is taking immediate and appropriate steps"—does not create an obligation, but is rather a recital or representation. Plaintiffs' allegations may reasonably lead to the inference that it was a misrepresentation, but it does not give rise to a cause of action for breach of contract as pled in the FAC.[4] Plaintiffs do not point the Court to any legal authority supporting a

---

[4] Likewise, the Contract provides that "Seller guarantees the Property is not

- 10 -

breach of contract claim under these circumstances, nor does the Court know of any. Accordingly, the Court will dismiss Count 3 and, because it is not plausible under Plaintiffs' allegations that they can cure the defect in the claim by amendment, Plaintiffs may not amend the claim. *See Lopez*, 203 F.3d at 1130.

### 4. Count 4 – Declaratory Judgment

In Count 4, Plaintiffs seek a declaratory judgment that Plaintiffs' "withholding of payments to Namaca pursuant to FIRPTA and FDAP" did not breach the Contract and that Leopard breached the Contract as alleged in Count 3. The Court resolved the latter issue above. As for the propriety of Plaintiffs' withholding of money owed under the Contract for payment to the I.R.S. pursuant to FIRPTA , 26 U.S.C. § 1445(a), and the FDAP rules, 26 U.S.C. § 1441, the issue before the Court is undeniably a determination of Plaintiffs' and Namaca's tax obligations under the Internal Revenue Code. But the Declaratory Judgment Act, 28 U.S.C. § 2201, provides that district courts do not have jurisdiction over declaratory judgment actions "with respect to Federal taxes." As a result, the Court lacks jurisdiction over Plaintiffs' claim and will dismiss Count 4 on this basis.

### 5. Count 5 – Wrongful Recording

Finally, in Count 5, Plaintiffs claim that Leopard's recording of the Notice of Election to Forfeit and Affidavit of Completion of Forfeiture violated A.R.S. § 33-420, which assigns liability to a person who records a document while "knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid."

---

currently encumbered;" "Seller affirms they have not allowed any interests (legal rights) to be created who [sic] affect the ownership or use of this property;" "No other persons have legal rights in this property;" and "There are no pending lawsuits or judgments against Seller or other legal obligations, which may be enforced against the Property;" and Leopard stated that the I.R.S. lien on the property was an "invalid lien." These were also representations, or misrepresentations, made at the time of execution of the Contract and then the Amendment, not contract obligations enforceable by Plaintiffs. (Contract at 1-2.)

This claim again depends on a central question in this case—whether Plaintiffs properly withheld payment to Namaca under the Contract to meet tax obligations under FIRPTA and the FDAP rules. For example, the regulations promulgated pursuant to FIRPTA state that a buyer of U.S. real property from a foreign person has a duty to withhold tax payments. 26 CFR § 1-1445-1. Plaintiffs' allegations are sufficient for the Court to reasonably infer that the Contract is one for a sale, Plaintiffs are buyers, the seller Namaca is a foreign person, and the Property is U.S. real property. The Internal Revenue Code does not provide for an adverse inference with regard to a buyer who deducts and withholds payment to a foreign seller under FIRPTA. Rather, the Internal Revenue Code provides for an action by a taxpayer for a credit or refund of an improperly collected tax. And, although the district court may hear certain challenges for the refund of federal taxes where the taxpayer has paid all of the taxes assessed, *Flora v. United States*, 362 U.S. 145 (1960), the Internal Revenue Code provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). Here, no such action before the Department of Treasury has occurred.[5] Because Count 5 cannot be resolved without resolving the underlying tax liability, and the parties must seek such resolution through the applicable administrative procedures of the Internal Revenue Code and accompanying regulations, the Court must dismiss Count 5. *See, e.g.*, *Singh v. Comm'r of Internal Revenue*, 631 Fed. App'x 457, 459 (9th Cir. 2015).

---

[5] The same procedure applies to the question of whether Plaintiffs properly deducted and withheld payments under the FDAP rules.

### B. Motion to Amend Answer to Add Counterclaims

In his Motion to Amend, Leopard, on behalf of Namaca, asks to add counterclaims of breach of contract, unjust enrichment, and quiet title against Plaintiffs. (Proposed FAVAC ¶¶ 89-104.) The Court is presented with the same central issue as that discussed above. Leopard alleges Plaintiffs breached the Contract by withholding payments under FIRPTA and the FDAP rules; Plaintiffs were unjustly enriched by living on the Property while withholding payments; and Plaintiffs should be barred from claiming any right to the Property as a result of their failure to make payments under the Contract. Again, all of these require resolution of the underlying tax liability question, and, in the present posture, this Court lacks jurisdiction to consider such a question. *See Singh*, 631 Fed. App'x at 459. Accordingly, Leopard's proposed counterclaims would be futile and the Court will deny the Motion to Amend. *See Saul*, 928 F.2d at 843.

IT IS THEREFORE ORDERED striking Defendant Philip K. Leopard's Response to Plaintiffs' Additional and Supplemental Facts (Doc. 49), because this filing is prohibited by Local Rule 56.1(b).

IT IS FURTHER ORDERED granting Defendant Philip K. Leopard's Motion to Dismiss and/or, Alternatively, Motion for Summary Judgment (Doc. 27). Counts 1 and 3 of the First Amended Complaint (Doc. 18) are dismissed with prejudice, and Counts 2, 4 and 5 are dismissed for lack of jurisdiction.

IT IS FURTHER ORDERED denying Defendant Philip K. Leopard's Motion for Leave to File First Amended Verified Answer and Counterclaim (Doc. 57). The Court would lack jurisdiction over Defendant's proposed counterclaims.

IT IS FURTHER ORDERED that, because no claims remain in this matter, the Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 23rd day of August, 2018.

Honorable John J. Tuchi
United States District Judge

- 13 -